**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **PEOPLE'S UNITED EQUIPMENT** | § | |
| **FINANCE CORP.** | § | |
| | § | |
| **VS.** | § | **C.A. No. _____** |
| | § | |
| **LENN WATERS MORRIS and** | § | |
| **RICKY DEAN FREEMAN** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

PEOPLE'S UNITED EQUIPMENT FINANCE CORP. f/k/a Financial Federal Credit Inc. ("Plaintiff"), a Texas corporation, complains of LENN WATERS MORRIS, an individual residing in the State of Alabama, and RICKY DEAN FREEMAN, an individual residing in the State of Alabama, and would respectfully show the Court as follows:

### JURISDICTION AND VENUE

1.      This Court has original jurisdiction under 28 U.S.C. § 1332(a)(2) in that this is a civil action between citizens or subjects of different states and the matter in controversy exceeds seventy-five thousand dollars, exclusive of costs and interest.

2.      Venue is proper in the United States District Court for the Southern District of Texas under 28 U.S.C. § 1391 (a) and (c) in that it is founded upon written contracts expressly providing for exclusive venue in, and performable in, this District.

### PARTIES

3.      Plaintiff is a corporation organized and existing under the laws of the State of Texas with its principal place of business in the State of Texas. Plaintiff changed its name from Financial Federal Credit Inc. to People's United Equipment Finance Corp. on October 18, 2010.

4.      Upon information and belief, Lenn Waters Morris is an individual residing in the State of Alabama, and may be served with process in this case at (i) 1501 Mystic Valley VW, Sterrett, AL 35147; or (ii) wherever he may be found.

5.      Upon information and belief, Ricky Dean Freeman is an individual residing in the State of Alabama, and may be served with process in this case at (i) 148 Edgil Road, Jasper, AL 35503; (ii) or wherever he may be found.

## BACKGROUND

6.      From time to time, Plaintiff provided financing to Forest Energies, LLC ("Forest") for the acquisition and/or purchase of equipment and/or working capital.  Lenn Waters Morris ("Morris") and Ricky Dean Freeman ("Freeman") (collectively, the "Defendants") guaranteed payment and performance of the obligations of Forest to Plaintiff.  The Defendants have defaulted on their obligations to Plaintiff by failing to make required payments to Plaintiff when due.

7.      Forest filed a petition under Chapter 11 of the United States Bankruptcy Code on November 18, 2016, under Case No. 16-04794-TOM11, in the United States Bankruptcy Court for the Northern District of Alabama, Birmingham Division (the "Bankruptcy"), and, therefore, Forest is not included as a party to this case.

## OBLIGATIONS

8.      Forest is indebted to Plaintiff pursuant to a Promissory Note dated January 8, 2016, in the original amount of $590,940.00, executed by Forest and delivered to Plaintiff (the "Note").

9.    Simultaneous with the execution of the Note, Forest executed and delivered to Plaintiff a Security Agreement (the "Security Agreement") dated the same day as the Note, granting Plaintiff a security interest in all of the equipment more particularly described on Schedule "A" to the Security Agreements (the "Equipment"), as well as a blanket security interest in all assets of Forest (the "Blanket Collateral").

10.    Plaintiff perfected its interest in the Equipment and the Blanket Collateral by filing UCC financing statements in all appropriate locations, and by recording its lien on the titles to the items of Equipment that are required to be titled.

11.    True and correct copies of the Note and the Security Agreement are attached hereto and incorporated herein marked as Exhibit 1.  The Note and the Security Agreement are sometimes hereafter collectively referred to as the "Loan Documents."

12.    The Loan Documents provide for acceleration of all indebtedness due under their terms in the event of default by the Defendants under any of their respective obligations to Plaintiff.

### GUARANTIES

13.    On or about January 8, 2016, each of the Defendants executed and delivered to Plaintiff a continuing guaranty of the obligations of Forest owed to Plaintiff (collectively, the "Guaranties").  The Guaranties formed part of the consideration for Plaintiff entering into the Loan Documents, and Plaintiff relied on the Guaranties in doing so.  True and correct copies of the Guaranties are attached hereto and incorporated herein marked as Exhibit 2.

14.    The Guaranties each provide that each of the Defendants agree to be directly and unconditionally liable to Plaintiff, without reduction by reason of any defense, setoff or

counterclaim, for the due payment and performance of the obligations of Forest to Plaintiff. The Guaranties further provide that the liability of the Defendants to Plaintiff is direct and unconditional and may be enforced against Defendant without prior resort to any other right, remedy or security and shall continue notwithstanding any repossession or other disposition of security regardless of whether same may be an election of remedies against Forest, that the liability of the Defendants to Plaintiff shall not be released, impaired or satisfied for any reason until the obligations of Forest to Plaintiff have been fully paid and performed, with interest, and that the Defendants will pay Plaintiff's reasonable attorneys' fees if the Guaranties are referred to an attorney for enforcement, together with any and all court costs and expenses. All notices to which the Defendants may be entitled, including, but not limited to, presentment, demand, notice of intent to accelerate, notice of acceleration and protest, are expressly waived by the terms of the Guaranties.

## DEFAULT

15.    Plaintiff is the owner and holder of the Loan Documents and the Guaranties and is the party entitled to payment thereof.

16.    All conditions precedent to Plaintiff's recovery have occurred.

17.    Defendants have defaulted by not making required payments due and owing under the Loan Documents and the Guaranties.

18.    The Defendants have failed and refused to make payments as promised under the Loan Documents and the Guaranties.

19.    In addition to the aforesaid payment defaults, the filing of the Bankruptcy constitutes a default under the terms of the Loan Documents.

20.     As a result of the defaults, Plaintiff has exercised its option to accelerate the unpaid balance of the indebtedness due under the Loan Documents, resulting in an aggregate balance due of $487,015.64 as of November 18, 2016.  In addition to the accelerated balance, additional interest, costs and attorneys' fees continue to accrue.

21.     The Defendants are liable to Plaintiff for all sums owing under the terms of the Loan Documents and the Guaranties.  Plaintiff is entitled to judgment against the Defendants, jointly and severally, in the aggregate amount of $487,015.64 as of November 18, 2016, together with additional interest, costs and attorneys' fees that continue to accrue in accordance with the terms of the Loan Documents and the Guaranties.

## INTEREST

22.     The Loan Documents expressly provides that, upon the occurrence of an event of default, interest shall accrue on the balance due at the maximum rate allowed by law.  The maximum rate allowed by Texas law is eighteen percent (18%) per annum for which Plaintiff herein sues.

## ATTORNEYS' FEES

23.     The Loan Documents and the Guaranties expressly provide that Plaintiff is entitled to recover its attorneys' fees, for which attorneys' fees Plaintiff herein sues.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Court that the Defendants be cited to appear and file an answer herein, and on final hearing hereof, that Plaintiff have and recover of and from the Defendants, jointly and severally, as follows:

   a)  judgment in the amount of $487,015.64;

   b)  interest thereon at the rate of eighteen percent (18%) per annum from and after
       November 18, 2016, until the date of judgment;

c)  reasonable attorneys' fees;

d)  post-judgment interest at the contractual rate of eighteen percent (18%) per annum as provided by law;

e)  all costs of court; and

such other and further relief to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

PEOPLE'S UNITED EQUIPMENT FINANCE CORP.

Robert Grawl, Jr.
State Bar No: 08313400 / SDOT No. 14141
1300 Post Oak Blvd., Suite 1300
Houston, Texas 77056
Telephone (713) 439-1177
Telecopier (713) 386-0337

OF COUNSEL:
Douglas R. Little
Attorney at Law
440 Louisiana, Suite 900
Houston, TX 77002
Telephone:   (713) 275-2069
Telecopier:   (713) 843-7901

EXHIBIT 1

# PROMISSORY NOTE

| $590,940.00 | MOUNTAIN BROOK | AL | January 8, 2016 |
|---|---|---|---|
| (Total of Note) | (City) | (State) | (Date) |

FOR VALUE RECEIVED, **FOREST ENERGIES, LLC** ("Maker") promises to pay to the order of **People's United Equipment Finance Corp.** ("Holder"), at **10715 David Taylor Dr, Ste 550, Charlotte, NC 28262**, or such other place as Holder may from time to time designate in writing, the amount of **Five Hundred Ninety Thousand Nine Hundred Forty Dollars and No Cents ($590,940.00)**, payable in consecutive **monthly** installments, as follows:

| | | | |
|---|---|---|---|
| 60 | installments, each in the amount of | $ 9,849.00 | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | ; then |
| | installments, each in the amount of | $ | . |

Said consecutive **monthly** installments shall commence on the **22nd** day of **February, 2016**, and continue on **March 22, 2016** and on the same day of each **month** thereafter until the indebtedness evidenced hereby is paid in full.  The Total of Note includes precomputed interest (at the "non-default interest rate") from the date hereof on the unpaid principal amount outstanding from time to time through the maturity of each installment (assuming that each installment will be received on its respective due date) (but in no event shall the rate of interest exceed any maximum permitted by applicable law).  Maker shall also pay to Holder on demand, on each installment (of principal and/or interest) not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire indebtedness (whether by acceleration or otherwise, and both before and after judgment), Maker shall pay, on demand, interest on the unpaid indebtedness (excluding accrued and unpaid interest and late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full. Unless prohibited by applicable law, during any period of time when Maker is in default under the terms of this Note, Maker shall pay interest on the unpaid principal amount outstanding from time to time at the maximum lawful daily rate, not to exceed 0.0666% per day, in place of the non-default interest rate set forth or implied in this Note, until the default is cured.  Interest shall be calculated on the basis of a 360 day year and for the actual number of days elapsed, unless such calculation would cause the effective interest rate to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year.  Maker agrees to an effective rate of interest which is the rate stated or implied in this Note plus any additional sums or charges provided for herein or incident to the transaction of which this Note forms a part which are or may be deemed to be interest under applicable law, but not more than the maximum amount permissible under applicable law.

Upon nonpayment when due of any amount owing hereunder, or if default occurs under any other obligation of Maker to Holder or under any security agreement, pledge, assignment, deed of trust, or any other instrument or document executed to evidence, secure, guarantee, govern or in any way pertain to the loan evidenced by this Note or any other obligation of Maker to Holder, Holder may, at its option, without notice or demand, accelerate the maturity of the accrued and unpaid indebtedness then outstanding under this Note, together with any corresponding prepayment premium as set forth below, and declare same to be at once due and payable whereupon it shall be and become immediately due and payable. Maker, all endorsers, guarantors and any other party liable on this Note also promise and agree to pay Holder's costs, expenses and reasonable attorneys' fees incurred in enforcing and/or collecting this Note.  Maker, all endorsers, guarantors and any other party liable on this Note waive presentment for payment, demand, protest, notice of protest and notice of nonpayment, default and dishonor, notice of intent to accelerate, notice of acceleration, and further, to the extent allowed by law, waive all benefits of valuation, appraisement and exemption laws.  Holder may, without notice, extend the time of payment of this Note, postpone the enforcement hereof, grant any other indulgence, add or release any party primarily or secondarily liable hereon and/or release or change any collateral securing this Note without affecting or diminishing Holder's right of recourse against Maker, all endorsers, guarantors and other parties liable on this Note, which right is hereby expressly reserved.  As used in this Note, the term "Holder" includes any future holder of this Note.  If more than one party signs this Note as Maker, the obligations of each of them shall be joint and several.

As a material inducement to Holder to advance funds or otherwise provide financial accommodations to or for the benefit of Maker and/or in consideration of Holder having previously done so, Maker agrees that in the event of any prepayment of any of Maker's indebtedness for borrowed money now or hereafter owing to Holder (whether evidenced hereby or otherwise), whether voluntary or involuntary, Maker shall simultaneously pay a prepayment premium equal to the sum of (a) two tenths percent (0.2%) of the principal amount then being prepaid multiplied by the number of calendar months between the date of such prepayment and the scheduled final maturity date of the indebtedness being prepaid, plus (b) three percent (3%) of the principal amount of the indebtedness then being prepaid, but not more than the maximum amount permitted by law.  Any partial prepayment shall be applied first to accrued and unpaid late charges, then to any other fees or expenses payable hereunder, then to accrued and unpaid interest, with the remainder applied to reduction of principal; the amount and due date of the remaining scheduled installments shall not be affected, but the number of remaining installments will be reduced as a result of said partial prepayment.  In the event Holder accelerates the maturity of the accrued and unpaid indebtedness then outstanding under this Note, the prepayment premium as calculated in accordance with this paragraph (as of the date of said acceleration) shall also become immediately due and payable.

Notwithstanding anything to the contrary in this Note or any related writing, all agreements between Maker and Holder, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall the interest contracted for, charged or received by Holder exceed the maximum amount permissible under applicable law.  The right to accelerate maturity of sums due under this Note does not include the right to accelerate any interest which has

©COPYRIGHT 2005, 2007 People's United Equipment Finance Corp.                                                                          PUEFC SA/PN24 (07/14)

not otherwise been earned on the date of such acceleration, and Holder does not intend to charge or collect any unearned interest in the event of acceleration. If, from any circumstance whatsoever, interest would otherwise be payable to Holder in excess of the maximum lawful amount, the interest payable to Holder shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Holder shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal, such excess shall be refunded to Maker. All interest paid or agreed to be paid to Holder shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Maker and Holder.

The proceeds from the loan evidenced by this Note are to be used for business purposes only, and no part thereof is to be used for primarily consumer, personal, family or household purposes.  Maker acknowledges and agrees that Maker's obligations hereunder shall be secured by any security agreement, mortgage, deed of trust or pledge executed by Maker in favor of Holder, whether now existing or hereafter executed.

THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT AGREEMENTS BETWEEN THE PARTIES.  THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.  THIS NOTE MAY NOT BE CHANGED OR TERMINATED ORALLY.

MAKER _____     MAKER   **FOREST ENERGIES, LLC** _____

By: _____     By: _____
Name: _____ Title        Name: _____ Title

_____
(Witness for all Makers)
Greg Evans-PUEFC

## ENDORSEMENT

The undersigned do each (jointly and severally) unconditionally guarantee the prompt payment of the within Note at maturity or any time thereafter, or on default prior thereto, hereby waiving presentment for payment, demand, protest, notice of protest, notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of every kind and nature, and accepting all of its provisions and authorizing Holder, without notice to any one or more or all of us, to substitute debtors, and/or to grant one or more extensions in whole or in part, and/or to receive security or additional security for the payment hereof and/or to surrender, release or substitute any such security.

If any payment on this Note is not paid when due, then the remaining unpaid indebtedness shall, without notice or demand, become immediately due and payable, at the option of Holder, and may be recovered in any suit brought by the Holder of this Note against any one or more or all of us, at the option of Holder, whether such suit has been commenced against Maker or not, and in any such suit Maker may be joined with one or more or all of us, at the option of Holder.

The Holder of this Note shall not be required to look to any security given or held for the payment of this Note, but may proceed against any one or more or all of us immediately upon a default in payment or otherwise.  Any execution may be immediately levied upon any real or personal property of the undersigned, all rights of the undersigned to have personal property last taken and sold under such execution being hereby expressly waived.

_____
(Endorser)

_____
(Endorser)

_____
(Endorser)

©COPYRIGHT 2005, 2007 People's United Equipment Finance Corp.                                         PUEFC SA/PN24 (07/14)

## SECURITY AGREEMENT

This Security Agreement dated **January 8, 2016**, is executed by **FOREST ENERGIES, LLC** ("Debtor") whose principal office (or residence) address is **2700 HIGHWAY 280 SUITE 210, MOUNTAIN BROOK, AL, 35223** in favor of **People's United Equipment Finance Corp.** ("Secured Party") whose address is **10715 David Taylor Dr, Ste 550, Charlotte, NC, 28282.**

1. To secure the payment and performance of all indebtedness, obligations and liabilities of Debtor to Secured Party of whatever kind, whether previously, contemporaneously, or subsequently incurred or created, whether direct or acquired from third parties, whether contingent or fixed, and whether of the same or different classes (including, without limiting the generality of the foregoing, all indebtedness, obligations and liabilities arising out of or relating to (i) advances, payments, loans, endorsements, guaranties, extensions of credit, financial accommodations and/or benefits granted or extended by Secured Party to or for the account of Debtor, (ii) notes, security agreements, lease agreements, rental agreements, installment sale contracts, bailment agreements, guaranties, and/or any other present or future agreements between Debtor and Secured Party, and/or (iii) expenses, charges, commissions and/or interest owing by Debtor to Secured Party or chargeable to Debtor by Secured Party), and all extensions, renewals and/or modifications of the foregoing (collectively, the "Obligations"), Debtor does hereby assign, transfer, pledge and grant to Secured Party a security interest/lien in/upon all property listed on any Schedule to this Agreement (the "Property"), and in all goods, inventory, equipment, accounts, accounts receivable, documents, instruments, chattel paper, contract rights, general intangibles, investment property, securities entitlements, deposit accounts, fixtures and other property, wherever located, now or hereafter belonging to Debtor or in which Debtor has any interest, and in all proceeds, insurance proceeds, substitutions, replacement parts, additions and accessions of and/or to all of the foregoing (collectively, including the Property, the "Collateral"). Debtor and Secured Party acknowledge that Secured Party may (but shall not be obligated to) make future loans or extensions of credit to or guaranteed by Debtor, refinance existing Obligations of or guaranteed by Debtor, or purchase from third parties loans or indebtedness of or guaranteed by Debtor, and Secured Party and Debtor agree that the Collateral shall be security for any and all such indebtedness.

2. Debtor hereby represents and warrants to Secured Party and covenants and agrees with Secured Party as follows: (a) All information supplied and statements made to Secured Party by or on behalf of Debtor relating to the Obligations or the Collateral are and shall be true, complete and accurate, whether supplied or made prior to, contemporaneously with or subsequent to the execution of this Agreement; (b) Debtor has good and marketable title to the Collateral, free and clear of any liens, security interests or encumbrances of any kind or nature whatsoever (except any claimed by Secured Party) and Debtor will warrant and defend the Collateral against all claims; (c) all Collateral listed on any Schedule to this Agreement is in Debtor's possession at the location shown above, unless a different location for a particular item is disclosed (i) on a certificate acknowledging delivery and acceptance thereof or (ii) on such Schedule, and shall at all times remain in Debtor's possession and control; (d) Debtor shall not change (i) its name, (ii) the location of any Collateral, or (iii) the location of (as applicable) Debtor's residence, principal place of business, executive office or the place where Debtor keeps its business records, without thirty (30) days prior written notice to Secured Party; (e) Debtor has full, unrestricted and lawful power and authority to sell and assign the Collateral, to grant Secured Party a security interest/lien therein/thereon as herein provided and to execute and perform this Agreement and all other instruments and agreements executed by Debtor in favor of Secured Party; (f) if an organization, Debtor is: (i) duly formed, organized, validly existing and in good standing in the state of its organization, (ii) duly qualified and in good standing in every jurisdiction where the nature of its business requires it to be so qualified, and (iii) authorized by all requisite action of its stockholders, directors, partners, members and/or managers to execute, deliver and perform this Agreement; (g) Debtor shall cause Secured Party to have a security interest and lien in/upon the Collateral which at all times shall be duly perfected, enforceable and superior to any liens, encumbrances and interests other than Secured Party's, and Debtor shall not permit the Collateral or any portion thereof to be removed from the Continental United States, nor to be or become subject to any lien or encumbrance of any kind or nature whatsoever (except in favor of Secured Party), nor shall Debtor sell, pledge, grant any security interest in, encumber, assign, rent, lease, lend, destroy or otherwise transfer or dispose of, or permit the filing of a financing statement with respect to (except in favor of Secured Party) any Collateral, nor shall Debtor guarantee any obligation of any other person or entity except in favor of Secured Party, without the prior written consent of Secured Party in each instance; (h) Debtor shall comply (to the extent necessary to protect the Collateral and Secured Party's interest therein) with the provisions of all leases, mortgages, deeds of trust or other contracts affecting any premises where any Collateral is or may be located and with any rules, laws, orders, ordinances or statutes of any state, county, municipality or other authority having jurisdiction relating to such premises and/or the conduct of business thereon and/or use thereof; (i) Debtor shall, at Debtor's sole cost and expense, keep and maintain all Collateral in good condition and repair, and shall use and maintain the Collateral in accordance with all applicable manufacturer's specifications and warranties; (j) all Collateral shall at all times remain personalty and shall not become part of any realty to which it may be attached so that Secured Party shall have the unrestricted right (subject only to the terms of this Agreement) to remove all or any portion thereof from any premises where it may be located, and Debtor will obtain and deliver to Secured Party (in a form acceptable to Secured Party) waivers from all landlords, mortgagees and owners of such premises; (k) Debtor shall (at Debtor's expense) upon request by Secured Party, obtain, execute and deliver all assignments, certificates, financing statements or other documents, give further assurances and do all other acts and things as may be necessary to fully perfect Secured Party's interest in the Collateral and to protect, enforce or otherwise effectuate the terms of this Agreement; and (l) Secured Party has no obligation to lend or advance funds unless and until all representations, warranties, conditions and requirements contained herein have been satisfied including without limitation receipt by Secured Party of proof of ownership of the Collateral satisfactory to Secured Party in its sole discretion, and any applicable subordinations and/or lien releases as may be required by, and in a form acceptable to, Secured Party in its sole discretion. Debtor hereby irrevocably designates and appoints Secured Party as Debtor's agent and attorney-in-fact to sign and deliver all such assignments, certificates, financing statements and other documents necessary to perfect, protect, continue and/or enforce Secured Party's interest in the Collateral and to file same with the appropriate office(s). Debtor hereby authorizes Secured Party to file one or more financing statements in all appropriate locations.

3. Debtor hereby acknowledges the validity of and affirms all of the Obligations, agrees that they are and shall be secured by this Agreement and absolutely and unconditionally promises and agrees to punctually and fully pay and perform all Obligations. Debtor shall pay to Secured Party on demand, on any installment of the Obligations not fully paid prior to the fifth day (or such longer period as required by law) after its due date, a late charge equal to the maximum percentage of such overdue installment legally permitted as a late charge, not to exceed five percent (5%); and after maturity of the entire unpaid indebtedness (whether by acceleration or otherwise, and both before and after judgment) of any one or more of the Obligations, Debtor shall pay, on demand, interest on such matured indebtedness (excluding unpaid late charges) at the maximum lawful daily rate, but not to exceed 0.0666% per day, until paid in full.

4. Debtor shall insure the Collateral against all risks of loss or damage from every cause (including without limitation fire, theft, vandalism, accident, flood, earthquake and extended coverage) for not less than the full replacement value as determined by Secured Party in its sole discretion, and shall carry liability and property damage insurance covering the Collateral. All insurance shall be in form and amount and with licensed, solvent companies approved by Secured Party, and shall name Secured Party as sole loss payee. Debtor shall pay the premiums therefor and deliver said policies or duplicates to Secured Party. Each insurer shall agree by endorsement upon the policy or policies issued by it or by independent instrument furnished to Secured Party to give Secured Party 30 days prior written notice before the policy shall be modified or canceled and that Secured Party's coverage shall not be diminished or invalidated by any negligence, act or omission of Debtor. The proceeds of such insurance, at the option of Secured Party, shall be applied toward the replacement or repair of the Collateral or toward payment of the Obligations. Debtor hereby irrevocably appoints Secured Party as its attorney-in-fact and agent to make claim for, adjust, compromise, settle, receive payment of, and to sign all documents, checks and/or drafts in payment of or relating to any claim for loss of or damage to the Collateral and for any returned premiums. If any required insurance expires, is canceled or modified, or is otherwise not in full force and effect, Secured Party may but need not obtain replacement insurance. Secured Party may but need not pay the premiums for insurance and/or replacement insurance and the amount of all premiums so paid by Secured Party shall be added to Debtor's obligations hereunder and shall be reimbursed to Secured Party on demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law) from the date paid by Secured Party until fully reimbursed by Debtor.

5. Secured Party shall have the right, at any reasonable time, to inspect all or any portion of the Collateral and/or Debtor's books and records. Debtor shall assist Secured Party in making any such inspection and Debtor shall reimburse Secured Party for its costs and expenses of making up to four such inspections per year. Upon request, Debtor shall, from time to time, furnish a current financial statement to Secured Party in form and content satisfactory to Secured Party, and shall provide annual certified financial statements within five (5) days of Secured Party's request therefor.

6. If Debtor shall fail to fully and timely pay, perform and fulfill any of its Obligations, covenants or agreements to or with Secured Party and/or if Debtor shall breach any of its warranties to Secured Party under this Agreement or otherwise, Secured Party shall have the option, in its sole discretion and without any obligation, to pay, perform, fulfill or cause the payment, performance or fulfillment of same on behalf of Debtor; and all costs and expenses incurred by Secured Party in connection therewith (including but not limited to attorneys' fees, bond premiums, court costs, costs of retaking, storing, preserving, selling and/or realizing on any Collateral) shall be added to the Obligations hereby secured and shall be payable by Debtor to Secured Party upon demand together with interest thereon at the maximum lawful daily rate, not to exceed 0.0666% per day (but only to the extent permitted by law), from the date advanced by Secured Party until fully repaid. Secured Party shall have no obligation to make any demand upon or give any notice to Debtor prior to the exercise of any of its rights under this paragraph; and neither the exercise nor the failure to exercise any such rights by Secured Party shall relieve Debtor of any default or constitute a waiver of Secured Party's right to enforce strict compliance with the terms of this Agreement at any time.

7. Debtor assumes all liability and risk of loss and agrees to defend, indemnify and hold Secured Party harmless from and against all claims, liabilities, causes of action and damages of any kind, including but not limited to injury to or death of any person(s) and for loss, damage or destruction of any property and for any fines, penalties, costs, expenses and charges in any way arising out of or related to the Obligations, this Agreement, the Collateral or its use, possession, storage, maintenance, repair, transportation or operation (including without limitation all costs and expenses of investigation, all attorneys' fees, court costs, arbitration expenses and costs, and all special, consequential, compensatory and punitive damages). Debtor, at its own cost and expense, shall use, operate, maintain, repair, transport and store the Collateral in a safe and careful manner in compliance with all applicable laws, rules and regulations (including without limitation those regulating hazardous substances, the environment and public health or safety), industry standards, insurance requirements and manufacturer's specifications and service bulletins. Debtor also assumes and agrees to indemnify, pay and hold harmless Secured Party and its directors, officers, employees and agents from all expenses, losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorneys fees that Secured Party may incur or sustain in obtaining or enforcing payment or performance of any of the Obligations or exercising its rights and remedies under this Agreement or in connection with any action, proceeding or appeal arising out of or related to this Agreement, the Obligations and/or the Collateral, whether brought by Debtor or any third party. The obligations of Debtor under this paragraph shall survive termination of this Agreement.

8. If any Event of Default exists, Secured Party without notice or demand may do one or more of the following, in any order, and such remedies shall be cumulative (none of which shall be exclusive but each is in addition to any other remedy available to Secured Party): (a) Secured Party may accelerate the maturity of the Obligations and declare same to be at once due and payable whereupon they shall be immediately due and payable; (b) Secured Party may require Debtor to pay all accrued interest, late charges, collection charges, reimbursement for any and all expenses incurred by Secured Party in enforcing any of the Obligations or this Agreement and reasonable attorneys' fees; (c) Secured Party may require Debtor to deliver any or all of the Collateral at Debtor's expense to such place or places as Secured Party may designate; (d) Secured Party may repossess/take possession of any or all of the Collateral wherever found, voluntarily or involuntarily, without notice, demand or legal process (Debtor, if permitted by applicable law, hereby waiving any right to notice or a hearing), and Secured Party may enter the premises where any or all Collateral are located and disconnect, render unusable, and remove any or all Collateral without liability to Debtor arising out of such entry, taking of possession or removal, and may use such premises without charge to store or show the Collateral for sale or other disposition; (e) Secured Party may sell the Collateral by public or private sale, hold, retain the Collateral in full or partial satisfaction of the indebtedness due to Secured Party, or otherwise dispose of the Collateral in any manner it chooses, free and clear of any claims or rights of Debtor; and/or (f) Secured Party may sue to enforce Debtor's performance hereof, or may exercise any other right or remedy then available to Secured Party permitted at law or in equity whether at not stated herein. Failure or delay on the part of Secured Party to exercise any right or remedy hereunder shall not operate as a waiver thereof. Debtor agrees that any public or private sale shall be deemed commercially reasonable (i) if notice of any such sale is mailed to Debtor (at the address for Debtor specified herein) at least ten (10) days prior to the date of any public sale or after which any private sale will occur; (ii) if notice of any public sale is published in a newspaper of general circulation in the county where the sale will occur at least once within the ten (10) days prior to the sale; (iii) whether the items are

© COPYRIGHT 2004, 2007 People's United Equipment Finance Corp.   PUEFC SA/SA I (04/12)

sold in bulk, singly, or in such lots as Secured Party may elect; (iv) whether or not the items sold are in Secured Party's possession and present at the time and place of sale; and (v) whether or not Secured Party refurbishes, repairs or prepares the items for sale. Secured Party may be the purchaser at any public sale. In all cases, Debtor shall be liable for any deficiency due and owing to Secured Party after any public or private sale, plus all costs, expenses and damages incurred by Secured Party including but not limited to all legal fees whether or not suit is filed, allocable costs of in-house counsel, costs related to the repossession, reconditioning and disposition of the Collateral, and all incidental and consequential damages. No action taken by Secured Party shall release Debtor from any of its obligations to Secured Party. Debtor acknowledges and agrees that in any action or proceeding brought by Secured Party to obtain possession of any Collateral, Secured Party shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Debtor and if Debtor contests Secured Party's right to possession of any Collateral in any action or proceeding Debtor shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Debtor's unpaid obligations to Secured Party, whichever is less. The proceeds of any sale shall first be applied to the costs and expenses of Secured Party including but not limited to recovering, transporting, storing, refurbishing, and/or selling the items sold, attorneys' fees, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions. Secured Party may without prior notice to or demand upon Debtor and with or without the exercise of any of Secured Party's other rights or remedies, apply toward the payment of Debtor's obligations (at any time owing to Secured Party) any checks, drafts, notes, balances, reserves, accounts and sums belonging to or owing to Debtor and coming into Secured Party's possession and for such purpose may endorse Debtor's name on any instrument or document payable to Debtor (whether for deposit, collection, discount or negotiation). Without notice to Debtor, Secured Party may make such applications or change applications of sums previously paid and/or to be paid to Secured Party, to such Obligations as Secured Party in its sole discretion may choose. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies.

9. Protest and all demands and notices of any action taken by Secured Party under this Agreement, or in connection with any Collateral, except as otherwise provided in this Agreement, are hereby waived by Debtor, and any indulgence of Secured Party, substitution for, exchange of or release of any person liable on the Obligations is hereby consented to. Debtor waives notice of the creation, advance, increase, existence, extension or renewal of, and of any indulgence with respect to, the Obligations; waives presentment, demand, notice of dishonor, and protest; waives notice of the amount of the Obligations outstanding at any time, notice of any change in financial condition of any person liable for the Obligations or any part thereof, notice of any Event of Default, and all other notices respecting the Obligations; and agrees that maturity of the Obligations or any part thereof may be accelerated, extended or renewed one or more times by Secured Party in its sole discretion, without notice to Debtor. In performing any act under this Agreement or any of the Obligations, time shall be of the essence and Secured Party's acceptance of partial or delinquent payments or performance, or failure or delay to exercise any right or remedy, shall not be a waiver of any obligation of Debtor or right of Secured Party nor constitute a waiver of any subsequent default.

10. This Agreement, Secured Party's rights hereunder and/or any of the Obligations may be assigned from time to time by Secured Party, and in any such case the assignee shall be entitled to all of the rights, privileges and remedies herein granted to Secured Party; and Debtor hereby waives and agrees not to assert against any assignee any defense, setoff, claim, recoupment or counterclaim Debtor may have against Secured Party or any prior assignee. Debtor shall not assign this Agreement nor any of Debtor's rights or obligations hereunder.

11. Debtor shall be in default hereunder upon the occurrence of any of the following (each an "Event of Default"): (a) Debtor or any endorser, guarantor, surety, accommodation party or other person liable for the payment or performance of any of tha Obligations ("Other Liable Party") fails to pay when due any sum due to Secured Party (whether hereunder or under any other Obligation to Secured Party) or to timely perform any obligation, covenant, term or provision of this Agreement or any other instrument and/or agreement now or hereafter existing between the parties, or there exists any Event of Default thereunder; (b) any warranty, representation or statement made to Secured Party by or on behalf of Debtor or any Other Liable Party is false in any respect when made or thereafter becomes false or is breached; (c) Debtor's or any Other Liable Party's death, dissolution, termination of existence, insolvency, business failure, assignment for the benefit of creditors, bulk transfer, proceeding under any bankruptcy or insolvency law, being declared judicially incompetent, voluntary or involuntary consent to the appointment of a receiver, trustee, conservator, liquidator or legal guardian for them or any or all of their property; (d) a default under any indebtedness of Debtor or any Other Liable Party or any event permitting the holder of any such indebtedness to accelerate the maturity thereof, whether or not such event is cured; (e) the Collateral becomes, in the sole judgment of Secured Party, unsatisfactory or insufficient in character or value; (f) Secured Party in good faith believes that the prospect of payment or performance of any of the Obligations or this Agreement is impaired; (g) any change in the management, operation, ownership or control of Debtor or any Other Liable Party; (h) any attachment, levy or execution against Debtor and/or any Other Liable Party that is not released within 48 hours; (i) Debtor's or any Other Liable Party's affairs so change as to, in Secured Party's sole discretion, increase the credit risk involved and Secured Party thereby becomes insecure as to the performance of this Agreement or any other agreement with Debtor or such Other Liable Party; (j) Debtor shall incur, create, assume, cause or suffer to exist any mortgage, trust, lien, security interest, pledge, hypothecation or other encumbrance (other than Secured Party's interest therein) or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral, this Agreement, or any of Secured Party's interests under this Agreement or any of the Obligations; (k) Debtor shall sell, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral; (l) failure of Debtor to obtain or maintain insurance on the Collateral satisfactory to Secured Party in its sole discretion; or (m) any of the Obligations, this Agreement, the security interest or any provision hereof for any reason attributable to Debtor ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Debtor or Debtor shall deny that it has any further liability or obligation thereunder.

12. The term "Debtor" as used in this Agreement shall be construed as the singular or plural to correspond with the number of persons executing this instrument as Debtor. "Secured Party" and "Debtor" as used in this Agreement include the heirs, executors or administrators, successors, legal representatives, receivers, and assigns of those parties. If more than one person executes this Agreement as Debtor, their obligations under this Agreement shall be joint and several. Unless the context otherwise requires, terms used in this Agreement which are defined in the Uniform Commercial Code are used with the meaning as therein defined. **THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.** No termination, modification, waiver or amendment of or to this Agreement shall be effective unless in writing signed by Debtor and an officer (assistant vice president or higher) of Secured Party. If any provision of this Agreement is rendered or declared invalid, illegal or ineffective by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision shall only invalidate such provision to the extent so rendered or declared invalid, illegal or ineffective and shall not impair, invalidate or nullify the remainder of this Agreement which shall remain in full force and effect. **THE PARTIES INTEND THAT THIS AGREEMENT AND EACH OF ITS TERMS BE VALID AND ENFORCEABLE AS WRITTEN AND, ACCORDINGLY, AGREE THAT THE VALIDITY AND ENFORCEABILITY OF THIS AGREEMENT AND EACH OF ITS TERMS SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DEBTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS AGREEMENT WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF SECURED PARTY'S LOCATION AS SET FORTH IN THIS AGREEMENT.**

13. Any notice or demand to Debtor hereunder or in connection herewith may be given and shall conclusively be deemed and considered to have been given and received upon the deposit thereof in the U.S. Mail, in writing, duly stamped and addressed to Debtor at the address set forth in this Agreement or at such other address of Debtor as Debtor shall have designated by notice in writing delivered to Secured Party. Actual notice to Debtor, however given or received, shall always be effective. **DEBTOR, AS A MATERIAL INDUCEMENT FOR SECURED PARTY TO MAKE LOANS OR OTHER FINANCIAL ACCOMMODATIONS AVAILABLE TO DEBTOR, HEREBY: IRREVOCABLY DESIGNATES AND APPOINTS THE TEXAS SECRETARY OF STATE AS ATTORNEY-IN-FACT AND AGENT FOR DEBTOR AND IN DEBTOR'S NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF TEXAS; AGREES TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY DISPUTE WITH SECURED PARTY OR ANY OF SECURED PARTY'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, INCLUDING WITHOUT LIMITATION ANY MATTER RELATING TO OR ARISING UNDER THIS OR ANY OTHER EXISTING OR FUTURE AGREEMENT WITH SECURED PARTY, PROVIDED THAT SECURED PARTY MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION; WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OBJECTION TO VENUE OF ANY SUCH ACTION OR PROCEEDING; WAIVES THE RIGHT TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING; AND CONSENTS AND AGREES THAT SERVICE OF PROCESS IN ANY ACTION OR PROCEEDING BROUGHT IN ACCORDANCE HEREWITH SHALL BE GOOD AND SUFFICIENT IF SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO DEBTOR AT DEBTOR'S ADDRESS AS PROVIDED HEREIN. THE PARTIES HEREBY WAIVE ANY AND ALL RIGHTS TO A JURY TRIAL OF ANY CLAIM, CAUSE OF ACTION, COUNTERCLAIM, CROSS-CLAIM, DEFENSE OR OFFSET INVOLVING DEBTOR, SECURED PARTY OR ANY OF SECURED PARTY'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, OR ANY PERSON CLAIMING ANY RIGHT OR INTEREST ACQUIRED FROM, THROUGH OR UNDER ANY OF THEM; AND DEBTOR FURTHER HEREBY WAIVES ANY AND ALL SPECIAL, EXEMPLARY, PUNITIVE AND CONSEQUENTIAL DAMAGES IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT AND/OR THE ACTS OR OMISSIONS OF SECURED PARTY OR ANY ASSIGNEE.**

14. **If Secured Party is for any reason compelled to surrender any payment received pursuant to any of the Obligations, because such payment is determined to be void or voidable as a preference, fraudulent transfer, impermissible set off or recoupment, a diversion of trust funds, or for any other reason, then such Obligation(s) shall be reinstated, if necessary and shall continue in full force notwithstanding any contrary action which Secured Party or Debtor may have taken in reliance upon such payment. Any such contrary action so taken shall be without prejudice to Secured Party's rights under the Obligations and hereunder and shall be deemed to have been conditioned upon such payment having become final and irrevocable.** The terms of paragraphs 1, 7, 10, 12, 13, 14 and 15 shall survive termination of this Agreement.

15. All agreements between Debtor and Secured Party, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of maturity or otherwise, shall any interest contracted for, charged or received by Secured Party exceed the maximum amount permissible under applicable law. If, from any circumstance whatsoever, interest would otherwise be payable to Secured Party in excess of the maximum lawful amount, the interest payable to Secured Party shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Secured Party shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of any principal and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of any principal, such excess shall be refunded to Debtor. All interest paid or agreed to be paid to Secured Party shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of any principal (including the period of any renewal or extension) so that the interest for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Debtor and Secured Party.

WITNESS (Attest if a corporation): DEBTOR: **FOREST ENERGIES, LLC**

[signature]

Greg Evans - [illegible] (Title)

BY: [signature]

Subscribed and sworn to before me, the undersigned notary public, on the date above written.

Name: (Title)

BY:

Notary public

Name: (Title)

## SCHEDULE "A"

This schedule is attached to and becomes part of a Security Agreement dated January 8, 2016.

| QUANTITY | YEAR | MODEL | DESCRIPTION OF COLLATERAL | SERIAL NUMBER |
|----------|------|-------|---------------------------|---------------|
| One(1) | 2016 | T880 | Kenworth Tractor | 1XKZDP9X6GJ100990 |
| One(1) | 2016 | T880 | Kenworth Tractor | 1XKZD40X7GJ479316 |
| One(1) | 2016 | T880 | Kenworth Tractor | 1XKZDP0X6GJ498408 |
| One(1) | 2016 | LT40 | Pitts Logging Trailer | 5JYLT4020GP162033 |
| One(1) | 2016 | LT40 | Pitts Logging Trailer | 5JYLT4024GP162035 |
| One(1) | 2016 | LT40 | Pitts Logging Trailer | 5JYLT4026GP162036 |

Including all attachments, accessions and accessories to, and all proceeds of, all of the foregoing, including without limitation all insurance proceeds and all rental proceeds, accounts and chattel paper arising out of or related to the sale, lease, rental or other disposition thereof.

This schedule is hereby verified correct and the undersigned acknowledge receipt of a copy.

Secured Party:                                   Debtor:
People's United Equipment Finance Corp.          FOREST ENERGIES, LLC

By: _____  By: _____
    Name and Title:                  Name and Title:

                                     Debtor:

                                     By: _____
                                         Name and Title:

PUEFC  Common/ScASpec (11/04)

EXHIBIT 2

## GUARANTY

**To:   People's United Equipment Finance Corp.**    10715 David Taylor Drive, Suite 550, Charlotte, NC 28262

(Address)

**Subject: FOREST ENERGIES, LLC**

**Consideration.** Guarantor is executing this Guaranty (i) as a material inducement to People's United Equipment Finance Corp. and/or its successors and assigns (collectively, "Beneficiary") to provide and/or purchase and/or accept and/or modify and/or renew and/or extend one or more Obligations, as defined below, and/or (ii) to induce Beneficiary to permit modification, substitution or release of any security for or guaranty of any Obligation, and/or (iii) to induce Beneficiary to purchase and/or accept one or more assignments of obligations of any other party from Subject, and/or (iv) to induce Beneficiary to purchase or accept one or more assignments from any other party of one or more Obligations, and/or (v) in consideration of Beneficiary having done any of the foregoing. Guarantor acknowledges and warrants that Guarantor already or expects to derive financial and other advantage and benefit, directly or indirectly, from the Obligations and each and every advance thereof and from each and every modification, renewal, extension, release of collateral or other relinquishment of legal rights made or granted or to be made or granted by Beneficiary to Subject, and that such benefit is in an amount not less than the amount guaranteed hereunder.

**Obligations.** As used herein, the term "Obligations" means (i) any and all existing and future indebtedness and/or obligations of Subject of whatever kind or character, whether direct or indirect, whether contingent or absolute, whether matured or unmatured and whether now or in the future arising, existing, incurred, contracted or owing to Beneficiary or acquired by Beneficiary by one or more assignments, transfers or otherwise, including without limitation promissory notes, loan agreements, security agreements, installment sale agreements, lease agreements, rental agreements, guaranties, personal property mortgages, real property mortgages, deeds of trust, pledge agreements, or other deferred or installment payment agreements, and/or other agreements of similar tenor, and/or (ii) any and all agreements relating to the assignment and/or purchase of any obligation of any other party from Subject.

**Guaranty.** Guarantor (whether one or more) agrees to be directly and unconditionally liable to Beneficiary, without reduction by reason of any claim, defense, setoff, counterclaim or recoupment of Subject or Guarantor, for the due payment and performance of all Obligations, whether previously, now or hereafter existing, created or incurred, and any and all renewals, refinancings, modifications, amendments, extensions, increases and/or supplements thereof. This is a guaranty of payment and performance, and not of collection. This is a continuing guaranty which shall remain in full force and effect, regardless of the death or dissolution of Guarantor, until full and indefeasible payment and performance of all Obligations, and thereafter until Beneficiary's actual receipt of a written notice of termination of Guarantor's obligations hereunder (any such notice of termination must be sent by certified mail and shall be effective only as to transactions arising, incurred or created after Beneficiary's receipt thereof).

Guarantor hereby covenants and agrees: (a) not to assign or transfer any assets to anyone without concurrently receiving the full and fair value thereof, and not to guarantee any obligation of any other person or entity, except in favor of Beneficiary, without express written consent of Beneficiary; (b) that Guarantor's liability to Beneficiary hereunder is direct and unconditional and may be enforced against Guarantor without Beneficiary's prior resort to any other right, remedy or security and shall continue notwithstanding any repossession or other disposition of security regardless of whether same may be an election of remedies against Subject; (c) that Guarantor's liability to Beneficiary hereunder shall not be released, impaired or satisfied for any reason until all Obligations of Subject have been fully and indefeasibly paid and performed, with interest; (d) to pay Beneficiary 's reasonable attorneys' fees incurred in enforcing either this Guaranty or any Obligations; and (e) that, at Beneficiary's sole option and without notice, any or all of Guarantor's obligations hereunder shall become immediately due and payable in the event that Guarantor or Subject shall become insolvent, make an assignment for the benefit of creditors, or become the subject (or any of Guarantor's or Subject's property becomes the subject) of any proceeding under any state or federal bankruptcy, reorganization or insolvency law, or if there is any other default or event of default under the terms of any Obligation.

Guarantor hereby: (f) waives, postpones, and subordinates the payment and performance of any and all present and future indebtedness and obligations of Subject to Guarantor until all present and future indebtedness and obligations of Subject to Beneficiary have been fully paid and performed; (g) waives any and all notices to which Guarantor may be entitled, including without limitation notice of Beneficiary's acceptance hereof, any and all demands for payment, notices of non-payment, notices of intent to accelerate and of acceleration, notices of dishonor and protest to Guarantor or to Subject or to any other maker, endorser or other obligor of or on any note(s), document(s) or instrument(s) for which Guarantor may be liable hereunder; (h) waives any right to require Beneficiary to proceed against Subject or any other guarantor or other party, (i) waives and releases, to the extent permitted by applicable law, relief under any and all appraisement, stay or exemption laws or rules that may be in effect from time to time; (j) waives and postpones any right to subrogation, indemnity, reimbursement, or recourse to or with respect to any assets or property of Subject or to any security for the Obligations, until all of the Obligations have been fully and indefeasibly paid and performed, with interest, and (k) waives any and all notice of and consents to any and all arrangements and agreements with Subject and/or any other person(s), including but not limited to arrangements and agreements for payment extension, composition, arrangement, subordination, release or discharge of all or any part of the Obligations, the release and/or change and/or substitution and/or surrender and/or abandonment of any or all collateral or other security, the release or addition of any maker(s), endorser(s), or other guarantor(s), or any compromise, forbearance or settlement, whether in the form of acceptance of partial payment, return of goods, acceptance of distributions in the form of dividends, or otherwise, and Guarantor agrees that Beneficiary's doing any or all of the foregoing shall not in any way diminish or impair Guarantor's liability to Beneficiary hereunder. In addition, none of the following events shall discharge or impair Guarantor's liability to Beneficiary hereunder: (l) any impairment, modification, release or limitation of liability of, or stay of lien enforcement proceedings against, Subject, its property, or its estate in bankruptcy, or any modification, discharge or extension of the Obligations resulting from the operation of any present or future provision of any federal or state law, code or statute or from the decision of any court; (m) Beneficiary's failure to use diligence in preserving the liability of any person on the Obligations; (l) if Subject is not liable because the act of creating all or any part of the Obligations is ultra vires or the officers or persons creating the Obligations acted in excess of their authority, or for any reason the Obligations cannot be enforced against Subject; or (n) any payment by Subject to Beneficiary is set aside or Beneficiary is required to refund such payment to Subject or any third party, because of bankruptcy preference law or otherwise.

Guarantor acknowledges and agrees that Guarantor's obligations hereunder shall be secured by any security agreement, mortgage, deed of trust or pledge executed by Guarantor in favor of Beneficiary, whether now existing or hereafter executed, and hereby grants Beneficiary the right to hold any and all sums due to Guarantor and/or any and all property of Guarantor now or hereafter coming into Beneficiary's possession as security for any and all of Guarantor's obligations to Beneficiary, whether now or hereafter arising, incurred or owed, and whether arising or owed hereunder or otherwise. Guarantor hereby grants to Beneficiary a security interest in all goods, inventory, equipment, accounts, accounts receivable, chattel paper, documents, instruments, contract rights, general intangibles, investment property, securities entitlements, deposit accounts, fixtures and other property of every kind, now owned and/or hereafter acquired by Guarantor, and in all proceeds, additions and accessions of and/or to all of the foregoing. Beneficiary is hereby authorized to file one or more financing statement(s) in all appropriate locations. Except in any jurisdiction where same is prohibited by law, Guarantor hereby irrevocably appoints and authorizes any attorney-at-law to appear for and confess judgment against Guarantor for any or all monies due Beneficiary from Subject, plus costs, expenses and attorneys' fees, without any stay of execution.

AS A MATERIAL PART OF THE CONSIDERATION FOR BENEFICIARY ENTERING INTO, PURCHASING AND/OR ACCEPTING AN ASSIGNMENT OF ONE OR MORE OBLIGATIONS FROM SUBJECT OR HAVING SUBJECT AS AN OBLIGOR THEREON, GUARANTOR HEREBY IRREVOCABLY DESIGNATES AND APPOINTS THE TEXAS SECRETARY OF STATE AS ATTORNEY-IN-FACT AND AGENT FOR GUARANTOR, AND IN GUARANTOR'S NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF TEXAS; AND GUARANTOR HEREBY AGREES TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY DISPUTE WITH BENEFICIARY OR ANY OF BENEFICIARY'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, INCLUDING WITHOUT LIMITATION ANY MATTER RELATING TO OR ARISING UNDER THIS OR ANY OTHER EXISTING OR FUTURE AGREEMENT WITH BENEFICIARY, PROVIDED THAT BENEFICIARY MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION. GUARANTOR WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OBJECTION TO VENUE OF ANY SUCH ACTION OR PROCEEDING; WAIVES THE RIGHT TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING; AND CONSENTS AND AGREES THAT SERVICE OF PROCESS IN ANY ACTION OR PROCEEDING BROUGHT IN ACCORDANCE HEREWITH SHALL BE GOOD AND SUFFICIENT IF SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO GUARANTOR AT HIS, HER OR ITS ADDRESS AS PROVIDED HEREIN. GUARANTOR AND BENEFICIARY HEREBY WAIVE THE RIGHT TO HAVE A JURY TRIAL IN ANY ACTION, CASE OR PROCEEDING BASED ON OR RELATING HERETO.

To the extent that any law limiting the amount of interest that may be contracted for, charged or received is applicable to the obligations of Guarantor under this Guaranty, no provision of this Guaranty shall require the payment or permit the collection of any sum in excess of the maximum lawful amount. If any sum in excess of the maximum lawful amount is provided for herein, then the provisions of this paragraph shall govern, and Guarantor shall not be obligated to pay any sum in excess of the maximum lawful amount. All interest paid or agreed to be paid to Beneficiary shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period from the date of each respective Obligation until payment in full of the principal of the Obligations (including any

period of renewal or extension thereof) so that the interest thereon for such full period shall not exceed the maximum amount permitted by applicable law. The intention of Guarantor and Beneficiary is to comply with all laws applicable to this Guaranty and Guarantor's obligations hereunder. Any notice to Guarantor shall be deemed received if sent to the address set forth below, or if no address is set forth below, to Subject's address.

Guarantor assumes and agrees to indemnify, pay and hold harmless Beneficiary, its successors, assigns, affiliates, directors, officers, employees, attorneys and agents from any and all losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorneys fees arising out of or related to or in connection with any Obligations or this Guaranty. The obligations of Guarantor under this paragraph shall survive termination of this Guaranty.

THIS GUARANTY AND ALL DOCUMENTS EXECUTED IN CONNECTION HEREWITH SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF GUARANTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS GUARANTY WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF BENEFICIARY'S LOCATION AS SET FORTH IN THIS AGREEMENT, shall be binding upon the heirs, executors, administrators, successors and assigns of Guarantor, and shall inure to the benefit of Beneficiary's successors and assigns. As used herein, the words " Beneficiary ", "Beneficiary's" or any variant thereof shall mean and include and this Guaranty shall operate in favor of and be severally enforceable by any addressee named above and/or any person or entity which is or at any time may be a parent, subsidiary, successor or assignee thereof.

THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. If more than one person executes this Guaranty, their obligations hereunder shall be joint and several.

DATE:   January 8, 2016

GUARANTOR:

Leon Waters Morris

Witness/Attest: 

Name:   Greg Evans-Puer (Title)

By: 

Name: 

Address:   1501 Mystic Valley VW

Sterrett, AL  35147

Individual Acknowledgement

State of _____   )
                             ) ss:
County of _____   )

The undersigned, a Notary Public duly qualified in and for said County and State, does hereby certify that on the day of _____, before me personally appeared _____, to me known and known to me to be the person named and described in and who executed the foregoing Guaranty in his/her own proper handwriting and who, being first duly sworn by me, stated and acknowledged that he/she has read and understands the foregoing Guaranty and executed same as his/her own free, lawful, and voluntary act and deed for the purposes and consideration therein expressed; to which witness my hand and official seal.

_____
Notary Public

My commission expires: _____

Corporate Acknowledgement

State of _____   )
                             ) ss:
County of _____   )

The undersigned, a Notary Public duly qualified in and for said County and State, does hereby certify that on the _____ day of _____, before me personally appeared _____, to me known and known to me to be the person named and described in and who executed the foregoing Guaranty in his/her own proper handwriting and who, being first duly sworn by me, acknowledged himself/herself to be the _____ of _____

__, and who acknowledged to me that: (i) he/she is such officer of the aforesaid corporation; (ii) he/she was authorized to execute the foregoing Guaranty for and in the name of said corporation and to make this acknowledgement; (iii) he/she has read and understands the contents of the foregoing Guaranty, (iv) the foregoing Guaranty was executed and delivered on behalf of said corporation by authority of its board of directors; (v) he/she executed and delivered the foregoing Guaranty as his/her free, lawful, and voluntary act and deed and as the free, lawful, and voluntary act and deed of said corporation for the purposes and consideration therein expressed; to which witness my hand and official seal.

_____
Notary Public

My commission expires: _____

## GUARANTY

To:   **People's United Equipment Finance Corp.**    10715 David Taylor Drive, Suite 550, Charlotte, NC 28262

(Address)

**Subject:** FOREST ENERGIES, LLC

**Consideration.**  Guarantor is executing this Guaranty (i) as a material inducement to People's United Equipment Finance Corp. and/or its successors and assigns (collectively, "Beneficiary") to provide and/or purchase and/or accept and/or modify and/or renew and/or extend one or more Obligations, as defined below, and/or (ii) to induce Beneficiary to permit modification, substitution or release of any security for or guaranty of any Obligation, and/or (iii) to induce Beneficiary to purchase and/or accept one or more assignments of obligations of any other party from Subject, and/or (iv) to induce Beneficiary to purchase or accept one or more assignments from any other party of one or more Obligations, and/or (v) in consideration of Beneficiary having done any of the foregoing. Guarantor acknowledges and warrants that Guarantor derived or expects to derive financial and other advantage and benefit, directly or indirectly, from the Obligations and each and every advance thereof and from each and every modification, renewal, extension, release of collateral or other relinquishment of legal rights made or granted or to be made or granted by Beneficiary to Subject, and that such benefit is in an amount not less than the amount guaranteed hereunder.

**Obligations.**  As used herein, the term "Obligations" means (i) any and all existing and future indebtedness and/or obligations of Subject of whatever kind or character, whether direct or indirect, whether contingent or absolute, whether matured or unmatured and whether now or in the future arising, existing, incurred, contracted or owing to Beneficiary or acquired by Beneficiary by one or more assignments, transfers or otherwise, including without limitation promissory notes, loan agreements, security agreements, installment sale agreements, lease agreements, rental agreements, guaranties, personal property mortgages, real property mortgages, deeds of trust, pledge agreements, or other deferred or installment payment agreements, and/or other agreements of similar tenor, and/or (ii) any and all agreements relating to the assignment and/or purchase of any obligation of any other party from Subject.

**Guaranty.**  Guarantor (whether one or more) agrees to be directly and unconditionally liable to Beneficiary, without reduction by reason of any claim, defense, setoff, counterclaim or recoupment of Subject or Guarantor, for the due payment and performance of all Obligations, whether previously, now or hereafter existing, created or incurred, and any and all renewals, refinancings, modifications, amendments, extensions, increases and/or supplements thereof. This is a guaranty of payment and performance, and not of collection.  This is a continuing guaranty which shall remain in full force and effect, regardless of the death or dissolution of Guarantor, until full and indefeasible payment and performance of all Obligations, and thereafter until Beneficiary's actual receipt of a written notice of termination of Guarantor's obligations hereunder (any such notice of termination must be sent by certified mail and shall be effective only as to transactions arising, incurred or created after Beneficiary's receipt thereof).

Guarantor hereby covenants and agrees: (a) not to assign or transfer any assets to anyone without concurrently receiving the full and fair value thereof, and not to guarantee any obligation of any other person or entity, except in favor of Beneficiary, without express written consent of Beneficiary, (b) that Guarantor's liability to Beneficiary hereunder is direct and unconditional and may be enforced against Guarantor without Beneficiary's prior resort to any other right, remedy or security and shall continue notwithstanding any repossession or other disposition of security regardless of whether same may be an election of remedies against Subject; (c) that Guarantor's liability to Beneficiary hereunder shall not be released, impaired or satisfied for any reason until all Obligations of Subject have been fully and indefeasibly paid and performed, with interest; (d) to pay Beneficiary 's reasonable attorneys' fees incurred in enforcing either this Guaranty or any Obligations; and (e) that, at Beneficiary's sole option and without notice, any or all of Guarantor's obligations hereunder shall become immediately due and payable in the event that Guarantor or Subject shall become insolvent, make an assignment for the benefit of creditors, or become the subject (or any of Guarantor's or Subject's property becomes the subject) of any proceeding under any state or federal bankruptcy, reorganization or insolvency law, or if there is any other default or event of default under the terms of any Obligation.

Guarantor hereby: (f) waives, postpones, and subordinates the payment and performance of any and all present and future indebtedness and obligations of Subject to Guarantor until all present and future indebtedness and obligations of Subject to Beneficiary have been fully paid and performed; (g) waives any and all notices to which Guarantor may be entitled, including without limitation notice of Beneficiary's acceptance hereof, any and all demands for payment, notices of non-payment, notices of intent to accelerate and of acceleration, notices of dishonor and protest to Guarantor or to Subject or to any other maker, endorser or other obligor of or on any note(s), document(s) or instrument(s) for which Guarantor may be liable hereunder; (h) waives any right to require Beneficiary to proceed against Subject or any other guarantor or other party, (i) waives and releases, to the extent permitted by applicable law, relief under any and all appraisement, stay or exemption laws or rules that may be in effect from time to time; (j) waives and postpones any right to subrogation, indemnity, reimbursement, or recourse to or with respect to any assets or property of Subject or to any security for the Obligations, until all of the Obligations have been fully and indefeasibly paid and performed, with interest, and (k) waives any and all notice of and consents to any and all arrangements and agreements with Subject and/or any other person(s), including but not limited to arrangements and agreements for payment extension, composition, arrangement, subordination, release or discharge of all or any part of the Obligations, the release and/or change and/or substitution and/or surrender and/or abandonment of any or all collateral or other security, the release or addition of any maker(s), endorser(s), or other guarantor(s), or any compromise, forbearance or settlement, whether in the form of acceptance of partial payment, return of goods, acceptance of distributions in the form of dividends, or otherwise; and Guarantor agrees that Beneficiary's doing any or all of the foregoing shall not in any way diminish or impair Guarantor's liability to Beneficiary hereunder.  In addition, none of the following events shall discharge or impair Guarantor's liability to Beneficiary hereunder: (l) any impairment, modification, release or limitation of liability of, or stay of lien enforcement proceedings against, Subject, its property, or its estate in bankruptcy, or any modification, discharge or extension of the Obligations resulting from the operation of any present or future provision of any federal or state law, code or statute or from the decision of any court; (m) Beneficiary's failure to use diligence in preserving the liability of any person on the Obligations; (l) if Subject is not liable because the act of creating all or any part of the Obligations is ultra vires or the officers or persons creating the Obligations acted in excess of their authority, or for any reason the Obligations cannot be enforced against Subject; or (n) any payment by Subject to Beneficiary is set aside or Beneficiary is required to refund such payment to Subject or any third party, because of bankruptcy preference law or otherwise.

Guarantor acknowledges and agrees that Guarantor's obligations hereunder shall be secured by any security agreement, mortgage, deed of trust or pledge executed by Guarantor in favor of Beneficiary, whether now existing or hereafter executed, and hereby grants Beneficiary the right to hold any and all sums due to Guarantor and/or any and all property of Guarantor now or hereafter coming into Beneficiary's possession as security for any and all of Guarantor's obligations to Beneficiary, whether now or hereafter arising, incurred or owed, and whether arising or owed hereunder or otherwise. Guarantor hereby grants to Beneficiary a security interest in all goods, inventory, equipment, accounts, accounts receivable, chattel paper, documents, instruments, contract rights, general intangibles, investment property, securities entitlements, deposit accounts, fixtures and other property of every kind, now owned and/or hereafter acquired by Guarantor, and in all proceeds, additions and accessions of and/or to all of the foregoing.  Beneficiary is hereby authorized to file one or more financing statement(s) in all appropriate locations.  Except in any jurisdiction where same is prohibited by law, Guarantor hereby irrevocably appoints and authorizes any attorney-at-law to appear for and confess judgment against Guarantor for any or all monies due Beneficiary from Subject, plus costs, expenses and attorneys' fees, without any stay of execution.

AS A MATERIAL PART OF THE CONSIDERATION FOR BENEFICIARY ENTERING INTO, PURCHASING AND/OR ACCEPTING AN ASSIGNMENT OF ONE OR MORE OBLIGATIONS FROM SUBJECT OR HAVING SUBJECT AS AN OBLIGOR THEREON, GUARANTOR HEREBY IRREVOCABLY DESIGNATES AND APPOINTS THE TEXAS SECRETARY OF STATE AS ATTORNEY-IN-FACT AND AGENT FOR GUARANTOR, AND IN GUARANTOR'S NAME, PLACE AND STEAD TO ACCEPT SERVICE OF ANY PROCESS WITHIN THE STATE OF TEXAS; AND GUARANTOR HEREBY AGREES TO THE EXCLUSIVE JURISDICTION AND VENUE OF ANY COURT LOCATED IN HARRIS COUNTY, TEXAS, REGARDING ANY DISPUTE WITH BENEFICIARY OR ANY OF BENEFICIARY'S OFFICERS, DIRECTORS, EMPLOYEES OR AGENTS, INCLUDING WITHOUT LIMITATION ANY MATTER RELATING TO OR ARISING UNDER THIS OR ANY OTHER EXISTING OR FUTURE AGREEMENT WITH BENEFICIARY, PROVIDED THAT BENEFICIARY MAY BRING SUIT IN ANY OTHER COURT HAVING JURISDICTION. GUARANTOR WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OBJECTION TO VENUE OF ANY SUCH ACTION OR PROCEEDING; WAIVES THE RIGHT TO TRANSFER THE VENUE OF ANY SUCH ACTION OR PROCEEDING; AND  CONSENTS AND AGREES THAT SERVICE OF PROCESS IN ANY ACTION OR PROCEEDING BROUGHT IN ACCORDANCE HEREWITH SHALL BE GOOD AND SUFFICIENT IF SENT BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO GUARANTOR AT HIS, HER OR ITS ADDRESS AS PROVIDED HEREIN. GUARANTOR AND BENEFICIARY HEREBY WAIVE THE RIGHT TO HAVE A JURY TRIAL IN ANY ACTION, CASE OR PROCEEDING BASED ON OR RELATING HERETO.

To the extent that any law limiting the amount of interest that may be contracted for, charged or received is applicable to the obligations of Guarantor under this Guaranty, no provision of this Guaranty shall require the payment or permit the collection of any sum in excess of the maximum lawful amount.  If any sum in excess of the maximum lawful amount is provided for herein, then the provisions of this paragraph shall govern, and Guarantor shall not be obligated to pay any sum in excess of the maximum lawful amount.  All interest paid or agreed to be paid to Beneficiary shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period from the date of each respective Obligation until payment in full of the principal of the Obligations (including any

period of renewal or extension thereof) so that the interest thereon for such full period shall not exceed the maximum amount permitted by applicable law. The intention of Guarantor and Beneficiary is to comply with all laws applicable to this Guaranty and Guarantor's obligations hereunder. Any notice to Guarantor shall be deemed received if sent to the address set forth below, or if no address is set forth below, to Subject's address.

Guarantor assumes and agrees to indemnify, pay and hold harmless Beneficiary, its successors, assigns, affiliates, directors, officers, employees, attorneys and agents from any and all losses, costs, claims, actions, causes of action, damages of any kind, liabilities, expenses and attorneys fees arising out of or related to or in connection with any Obligations or this Guaranty. The obligations of Guarantor under this paragraph shall survive termination of this Guaranty.

THIS GUARANTY AND ALL DOCUMENTS EXECUTED IN CONNECTION HEREWITH SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF GUARANTOR'S LOCATION AS SET FORTH IN THIS AGREEMENT, OR, IF ONE OR MORE OF THE TERMS OF THIS GUARANTY WOULD BE INVALID OR UNENFORCEABLE UNDER THE LAWS OF SUCH STATE, THE LAWS OF THE STATE OF BENEFICIARY'S LOCATION AS SET FORTH IN THIS AGREEMENT, shall be binding upon the heirs, executors, administrators, successors and assigns of Guarantor, and shall inure to the benefit of Beneficiary's successors and assigns. As used herein, the words " Beneficiary ", "Beneficiary's" or any variant thereof shall mean and include and this Guaranty shall operate in favor of and be severally enforceable by any addressee named above and/or any person or entity which is or at any time may be a parent, subsidiary, successor or assignee thereof.

THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. If more than one person executes this Guaranty, their obligations hereunder shall be joint and several.

DATE: January 8, 2016

Witness/Attest:
Name: _____ Euns-buere (Title)

GUARANTOR: _____ Ricky Dean Freeman
By: _____
Name: _____
Address: 148 Edgil Road
Jasper, AL 35503

### Individual Acknowledgement

State of _____ )
County of _____ ) ss.

The undersigned, a Notary Public duly qualified in and for said County and State, does hereby certify that on the _day of _____, before me personally appeared _____, to me known and known to me to be the person named and described in and who executed the foregoing Guaranty in his/her own proper handwriting and who, being first duly sworn by me, stated and acknowledged that he/she has read and understands the foregoing Guaranty and executed same as his/her own free, lawful, and voluntary act and deed for the purposes and consideration therein expressed; to which witness my hand and official seal.

_____ Notary Public

My commission expires:_____

### Corporate Acknowledgement

State of _____ )
County of _____ ) ss.

The undersigned, a Notary Public duly qualified in and for said County and State, does hereby certify that on the _____ day of _____, before me personally appeared_____, to me known and known to me to be the person named and described in and who executed the foregoing Guaranty in his/her own proper handwriting and who, being first duly sworn by me, acknowledged himself/herself to be the _____ of_____

_, and who acknowledged to me that: (i) he/she is such officer of the aforesaid corporation; (ii) he/she was authorized to execute the foregoing Guaranty for and in the name of said corporation and to make this acknowledgement; (iii) he/she has read and understands the contents of the foregoing Guaranty; (iv) the foregoing Guaranty was executed and delivered on behalf of said corporation by authority of its board of directors; (v) he/she executed and delivered the foregoing Guaranty as his/her free, lawful, and voluntary act and deed and as the free, lawful, and voluntary act and deed of said corporation for the purposes and consideration therein expressed; to which witness my hand and official seal.

_____ Notary Public

My commission expires:_____